11 AM

ORIGINAL

#067683

FILED

FEB 19 2008

U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| TYLER CONSTRUCTION GROUP, Plaintiff, | : | |
| v. | : | No. 08-94 C |
| THE UNITED STATES, Defendant. | : | |

**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DECLARATORY JUDGMENT**

Plaintiff, Tyler Construction Group, ("Tyler"), through its undersigned counsel, for its Complaint in the above-captioned matter, alleges as follows:

NATURE OF ACTION

1. This is a protest prior to submission of proposals challenging the propriety of the solicitation by negotiation of multiple award indefinite delivery indefinite quantity ("IDIQ") contracts for the performance of design/ build construction task orders for the U.S. Army Corps of Engineers under Solicitation No. W9126G-07-R-0122.

JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. 1491(b)(1) and (b)(2).

PARTIES

3. Plaintiff, Tyler, a small business general contractor, is a South Carolina corporation with its principal place of business located in Columbia, South Carolina.

4. Defendant is the United States, acting through its agency, the U.S. Army Corps of Engineers ("Corps"), Fort Worth District.

FACTUAL ALLEGATIONS

5. On October 30, 2007, the Defendant, acting through the Fort Worth District of the U.S. Army Corps of Engineers, issued Solicitation No. W9126G-07-R-0122 under the negotiated procedures set forth in FAR, Part 15, for a single award task order contract ("SATOC") for the design and construction of Advanced Individual Training (AIT), Basic Training Barracks (BT), and Warrior in transition (WIT) facilities in an eight state area in the southeastern United States (AL,FL,GA,KY,MS,NC,SC,TN). The proposals were due on December 6, 2007.

6. Other than the parenthetical phrase, "Primarily Fort Benning," in the solicitation title, the solicitation contained no indication of the geographical location of any of the individual task orders, with the exception of the initial task order, and simply listed an eight state area in the southeastern United States where task order work could be solicited.

7. On the same day, October 30, 2007, the Defendant, also through the Fort Worth District, issued a second negotiated SATOC, Solicitation No. W9126G-07-R-0123, for the design and construction of the same type of facilities in the same eight state area. The only difference was the parenthetical phrase, "Primarily Fort Jackson," which was also the location of the first task order.

8. The Plaintiff filed a protest in this Court regarding Solicitation No. W9126G-07-R-0123 on December 3, 2007 (Case No. 07-851C), challenging the Defendant's decision to solicit the construction of large military complexes through the use of Indefinite Delivery/Indefinite Quantity ("IDIQ") procurement. On December 4, 2007, Defendant issued an amendment in

Solicitation No. W9126G-07-R-0122 postponing the proposal due date indefinitely while the Court considered Plaintiff's protest.

9. On January 8, 2008, Defendant cancelled Solicitation No. W9126G-07-R-0123 in its entirety and Plaintiff, pursuant to RCFC 41(a)(1), voluntarily dismissed Case No. 07-851C on January 10, 2008.

10. On February 1, 2008, Defendant issued Amendment 0006 to Solicitation No. W9126G-07-R-0122. Defendant ostensibly changed the procurement from a single award task order contract to a multiple award task order contract, ("MATOC").

11. The solicitation provided that the Defendant would award up to two contracts. However, the solicitation also provided that the Defendant reserved the right to only award a single contract.

12. The amendment to the solicitation increased the contract time from a base year plus two option years to a base year and three option years. The amendment also increased the estimated total contract amount from $134,000,000 to $301,000,000, and decreased the scope of the complexes to be designed and built, by deleting the design and construction of Battalion Headquarters facilities. The minimum order amount was increased from $20,000.00 to $15,000,000, the typical construction value of a task order was increased from $10,000,000 to $31,250,000, and the maximum value of a task order was reduced from $134,000,000 to $95,000,000.

13. On February 14, 2008, the Defendant issued Amendment 0009 and decreased the contract time back to a base year and two option years. The proposal due date is February 20, 2008.

14. The increases in contract amount and decreases in project scope, when combined with the intent to award two IDIQ contracts or a single IDIQ contract, effectively provides Defendant with the contractual vehicle to also obtain the work that would have been procured under the cancelled solicitation. In fact, Defendant has issued a number of overlapping MATOC solicitations giving it even greater flexibility to procure a virtually unlimited variety of construction projects without further competition. (Defendant, through the Fort Worth District alone, has set February 20, 2008 as the due date for proposals in ten MATOC and three SATOC procurements for different regions in the United States. Defendant, acting through other Corps districts, is conducting many other MATOC procurements.)

15. An IDIQ contract provides the Government with the ability to order the supplies or services that it requires from a contractor in indefinite quantities, within stated limits, for a fixed period of time. (FAR 16.504(a)).

16. A MATOC contract is one of a group of IDIQ contracts awarded under a single master solicitation to a number of contractors. The Government then has the ability to issue requests for task order proposals from the MATOC contractors. The MATOC contractors then compete to furnish the Government with the supplies or services it requires. (FAR 16.504).

17. "Supplies and services," as the term in used in FAR 16.504 does not encompass the construction of large, multi-million dollar military complexes, nor does a "quantity" of supplies or services apply to a "quantity" of design/build military complexes. In fact, the "quantity" being procured here is simply the open-ended acquisition of $301 million dollars worth of military design/build work to be performed by only two sources, or possibly by a single source..

18. The solicitation employs a two-phased procurement procedure pursuant to 10 U.S.C. § 2305a and FAR 36.301. In Phase 1 the performance capabilities of the offerors are to be evaluated based on specialized experience, past performance, organization, and technical approach. Up to five of the offerors will be "short-listed" and requested to submit Phase 2 proposals. In Phase 2, offerors are to submit a conceptual design, technical narrative, performance schedule, and price for the initial task order. The Defendant may award up to two fixed-price Indefinite Delivery Indefinite Quantity contracts to the responsible offerors whose proposals offer the best overall value to the Government.

19. The solicitation provides the scope of work for the initial task order and identifies it as a "Basic Training (BT) Barracks/Company Operations with running track and training pits" at Fort Benning, Georgia, at an estimated value between $25 million and $100 million.

20. The solicitation also identifies the scope of work for the other types of facilities that may be procured using this MATOC for projects in the eight state area. In addition to the BT Complex, the scope of work for other task orders are an Advanced Individual Training (AIT) Complex that includes barracks/company operation facilities, dining facilities, support facilities and outdoor facilities; and a Warriors In Transition (WIT) Complex that consists of barracks, a family assistance center, and an administrative building. The solicitation contains no indication of how many, or where, these additional complexes may be located.

21. Each of these complexes consists of buildings that, individually or in combination, have been procured previously as individual procurements, many of which were suitable for small businesses. Plaintiff has successfully performed the construction of similar buildings for the military in the past, including facilities in the southeastern United States.

22. The United States Census Bureau has adopted the North American Industry Classification System (NAICS) to identify and categorize industries in the United States.

23. The NAICS codes are used by Federal agencies to characterize the type of products or services that are being acquired. The solicitation states that the applicable NAICS code is 236220, "Commercial and Industrial Building Construction."

24. The United States Small Business Administration establishes size standards for small businesses. 13 CFR 121.201. The size standard for NAICS code 236220 is $31 million in annual receipts. Plaintiff is within the small business size standard for NAICS code 236220.

25. The solicitation provides that offerors must be registered in the Central Contractor Registration, ("CCR"). The Central Contractor Registration (CCR) is the primary registrant database for the U.S. Federal Government. CCR collects, validates, stores and disseminates data in support of agency acquisition missions. There are 2,598 small business contractors within the eight state area encompassed by this solicitation who are registered with the CCR.

26. The dollar value of the task orders that could be issued to a single awardee, or up to two awardees, totals $301,000,000 and is beyond the financial capabilities of a small business contractor qualifying under NAICS code 326220.

27. The consolidation of all of the component parts and individual construction projects that make up the proposed BT, AIT, and WIT Complexes in the eight state area of the southeastern United States constitutes "bundling," as defined in FAR 2.101.

28. The bundling of these requirements into a single solicitation is a violation of Federal law and regulation and is improper.

29. The solicitation discriminates against the interests of small business concerns and lacks a rational basis.

30. There are 2,918 contractors who are registered with the CCR within the eight state area encompassed by this solicitation. Of these, 320 are large businesses and are therefore potential offerors under the improperly restrictive terms of the solicitation, and 2,598 are small business construction contractors, like the Plaintiff, who will be denied any realistic opportunity to perform work described in the solicitation as a prime contractor.

31. If the procurement were to proceed, it would result in possibly one contractor, and certainly no more than two contractors, performing up to $301,000,000 of military construction within an eight state area for up to the next three years, and all other potential offerors would be precluded from competing for the individual task orders issued under the MATOC.

32. This solicitation is unduly restrictive of competition and violates the Competition in Contracting Act, 10 U.S.C. §2304a.

33. The Competition in Contracting Act, as implemented by procurement regulations, provides a preference for the use of sealed bidding in construction. Part 36 of the FAR provides that the contracting officer shall use sealed bid procedures for a construction contract if the conditions in FAR 36.103(a) and FAR 6.401(a) apply.

34. Paragraph 6.401(a) of the FAR provides:

> Contracting Officers shall solicit sealed bids if --
>
> (1) Time permits the solicitation, submission, and evaluation of sealed bids;
>
> (2) The award will be made on the basis of price and other price-related factors;

(3) It is not necessary to conduct discussions with the responding offerors about their bids; and

(4) There is a reasonable expectation of receiving more than one sealed bid.

35. The bundling of individual construction projects into a procurement for high dollar value design/build military complexes effectively circumvents the preference for sealed bidding.

36. The fact that the solicitation does not prohibit the Corps of Engineers from issuing task order solicitations to the successful offeror or offerors for the construction of any military project, means that individual task orders may be issued that would otherwise qualify for the participation of small business in competitive procurements.

37. Any such future task orders issued under the umbrella of this MATOC procurement that would have otherwise qualified for sealed bidding or competitively negotiated procurements available to small business concerns, will nevertheless be procured by the unduly restrictive competition between no more than two IDIQ contractors, or if only one contract is awarded, by the issuance of non-competitive task orders to a single IDIQ contractor.

38. The issuance of such future, and potentially smaller in scale, task orders will be shielded from judicial review and will not be subject to protest by disappointed offerors, or by companies like the Plaintiff who would have been interested in competing for the work. Once the MATOC awards are made, disappointed contractors will lack standing to protest individual task order solicitations.

## REQUEST FOR RELIEF

WHEREFORE, TYLER CONSTRUCTION GROUP respectfully requests that this Court enter an Order providing for:

1. A preliminary and permanent injunction preventing the United States from awarding a contract under Solicitation No. W9126G-07-R-0122.

2. A declaratory judgment that the procurement of "supplies and services" as envisioned by FAR 16.5 does not explicitly or implicitly allow the acquisition of large design/build military construction projects, or major construction projects generally.

3. A declaratory judgment that the procurement of these facilities violates the prohibition on bundling as provided by 15 U.S.C. §631(j) and therefore is unduly restrictive of participation by small business concerns.

4. A preliminary and permanent injunction directing the agency that it may only proceed with the procurement of these facilities using individual project solicitations that provide appropriate opportunities for the participation of small business concerns.

5. Such other relief as the Court deems just and proper under the circumstances of this case.

Respectfully submitted,

Date: 2-18-08

Michael H. Payne, Esquire
Payne Hackenbracht & Sullivan
220 Commerce Dr., Suite 100
Ft. Washington, PA 19034
215-542-2777/215-542-2779(fax)
Attorney of record for
TYLER CONSTRUCTION GROUP

Of Counsel:
Joseph A. Hackenbracht, Esquire
Timothy A. Sullivan, Esquire
Payne Hackenbracht & Sullivan