IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| TYLER CONSTRUCTION CO., | ) | |
| | ) | No. 08-94C |
| Plaintiff, | ) | (Judge Wiese) |
| | ) | |
| v. | ) | **CONFIDENTIAL MATERIAL** |
| | ) | **REDACTED** |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY BRIEF IN SUPPORT OF
MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD (REDACTED)

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

REGINALD T. BLADES, JR.
Assistant Director

DOUGLAS G. EDELSCHICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, DC 20530
Tel: (202) 353-9303

Attorneys for Defendant

OF COUNSEL:

Thomas J. Warren, CPT, JA
Office of the Chief Counsel
United States Army Corps of Engineers
441 G. St. N.W.
Washington, DC 20314

Charles L. Webster III
Engineer Trial Attorney
United States Army Corps of Engineers
Fort Worth District
819 Taylor Street
Fort Worth, Texas 76102

June 2, 2008

Defendant, the United States, respectfully submits this reply in support of our motion for judgment upon the administrative record dated April 25, 2008.[1]

I. THE EXPRESS DEFINITIONS IN THE FAR ARE CONTROLLING

In our opening brief, we analyzed the defined terms, "acquisition" and "contract," that appear in FAR Part 16 and authorize the use of IDIQ contracts for new building construction. Without addressing the merits of our analysis or FAR section 16.000, Tyler argues that the term "supplies or services" in FAR section 16.504 does not include construction-related "supplies or services." Pl. Resp. 2-9. According to Tyler, the Court should disregard the "convoluted" definitions in FAR part 2 and, instead, should interpret Tyler's selective FAR citations by negative implication. Id. Tyler's rhetoric is not sufficient to overcome the straightforward definitions in the FAR and ordinary common sense.

Tyler does not identify any statute, rule, or regulation that expressly prohibits the use of IDIQ contracts for new building construction. Tyler, nevertheless, observes that the FAR refers to "supplies or services (including construction)" approximately seven times. Pl. Resp. 6; see also 48 C.F.R. §§ 2.101, 3.104-1, 13.000, 14.000, 15.201, 22.1402, 28.201. Tyler argues that, by negative implication, the term "supplies or services" should be read to exclude construction services when the modifier ("including construction") is not present. Pl. Resp. 6-8. Yet, Tyler overlooks that the FAR also refers to "supplies or services (except construction)" approximately seven times. 48 C.F.R. §§ 19.202-1, 52.219-3, 52.219-4, 52.219-14, 52.219-27, 52.226-5; see also 48 C.F.R. § 42.1102 (referring to "services other than construction"). Applying Tyler's reasoning, these provisions would demonstrate that the term "supplies or services" should be read to include construction unless the modifier ("except construction") is present. There is no need for the Court to attempt to resolve the attenuated and competing inferences that are

[1] Defined terms in our opening brief have the same meaning in this reply.

implicated by Tyler's argument. The Court instead should rely upon the express terms that are defined in FAR part 2 and used in FAR part 16, which authorize the use of IDIQ contracts for new building construction. See 48 C.F.R. § 1.108(a) ("Definitions in Part 2 apply to the entire regulation unless specifically defined in another part, subpart, section, provision, or clause."); 48 C.F.R. § 16.000 (FAR part 16 "describes types of contracts that may be used in acquisitions"); 48 C.F.R. § 16.504 (section in FAR part 16 that describes IDIQ contracts).

Tyler's next argument concerns FAR section 36.101, which refers to "[a] contract for both construction and supplies or services." Pl. Resp. 8-9; 48 C.F.R. § 36.101(c). Tyler incorrectly argues that section 36.101 makes "a distinction between 'construction' on the one hand and 'supplies or services' on the other hand," such that, by negative implication, the two concepts should be viewed as "mutually exclusive." Pl. Resp. 8-9. Section 36.101 uses the term "contract," which is defined as an agreement "to furnish … supplies or services (including construction)." 48 C.F.R. § 2.101(b)(2). By using the defined term "contract," section 36.101 incorporates the notion that "construction" is a subset of "supplies or services." As Tyler notes, there are mandatory clauses in the FAR that pertain to construction contracts (in particular) and to services contracts (in general). Section 36.101(c) addresses the question of what clauses should be utilized when a contract pertains, not only to construction-related supplies or services, but to other types of supplies or services as well. 48 C.F.R. § 36.101(c). Section 36.101 does not decree that "construction" and "supplies or services" are mutually exclusive, much less purport to override the definitions in FAR part 2 that apply to the entire FAR and part 16.

Tyler makes a related argument that FAR section 37.101, which defines "service contracts," does not expressly refer to "construction," such that, by negative implication, the term "services" should not be interpreted to include "construction." Pl. Resp. 9. Section 37.101,

however, uses the defined term "contract," which means an agreement "to furnish … supplies or services (including construction)." 48 C.F.R. §§ 2.101(b)(2), 37.101. In addition, although section 37.101 includes a list of "[s]ome of the areas in which service contracts are found," the list is not exhaustive and includes only "some" types of service contracts. 48 C.F.R. § 37.101. No inference may be drawn from the absence of "construction" from this non-exclusive list, and certainly not a negative inference powerful enough to trump the definition of the term "contract."

Moreover, Tyler's negative implication arguments would have absurd results. We noted in our opening brief that, if "construction" was not included in "supplies or services," then the open competition requirement would not apply to the Solicitation. Def. Br. 15. In response, Tyler purports to argue (while admitting that it has not researched the issue) that FAR section 6.101(a) is proof positive that "the full and open competition requirements of CICA apply to construction contracting." Pl. Resp. 16. Section 6.101(a) provides that the open competition requirement applies "in soliciting offers and awarding Government contracts." Id. (quoting 48 C.F.R. § 6.101(a)). Section 6.101(a) applies to construction, however, only by virtue of its use of the defined term, "contracts," which incorporates "construction" within the concept of "supplies or services." 48 C.F.R. § 2.101(b)(2) ("contract" means agreement "to furnish … supplies or services (including construction)").

Tyler cites no support for its dubious suggestion that the phrase "supplies or services" in the FAR should exclude construction, whereas the phrase "property or services" in the United States code should include construction. Pl. Resp. 16. The phrase "supplies or services" in the FAR closely mirrors the phrase "property or services" in the United States code. Compare 48 C.F.R. § 2.101(b)(2), with 10 U.S.C. § 2304; 41 U.S.C. § 253(a)(1)(A). The term "[s]upplies means all property except land or interest in land," whereas the term "property" is slightly

broader and includes most real property. 48 C.F.R. § 2.101(b)(2) (definition of "supplies"); 40 U.S.C. § 102(9) (definition of "property"). In 1952, Congress amended the Federal Property and Administrative Services Act to substitute the slightly broader term, "property," for the previously used term, "supplies," to extend the Act's procedural provisions to procurements of land. Act of July 12, 1952, ch. 703, § 1(m), 66 Stat. 594, 82 P.L. 522; H.R. Rept. No. 82-1524, at 11 (1952) ("substituting the term 'property' for the term 'supplies'" will (i) "make the terminology of title III of the act consistent with the terminology employed elsewhere in the act," (ii) "remove a definition of 'supplies' which is not technically exact and which was inserted merely to prescribe the scope of the title," and (iii) "make the procedures provided by this title applicable to the procurement of land … to the extent that authority to acquire land is granted under other law."). The procurement at issue in this case, however, does not involve an acquisition of real property. Hence, the phrases "supplies or services" and "property or services" may be treated as interchangeable for purposes of this case. If, as Tyler argues, "construction" is not included within "supplies or services," then the entire $45 billion MILCON program is not subject to the open competition requirement, which applies to procurements of "property or services." We doubt that Congress intended such an absurd result.

Tyler argues further that the cases cited in our opening brief are not controlling and do not preclude the Court from considering the merits. Pl. Resp. 10-12. Although the issue in this case – whether the Corps may use IDIQ contracts for new building construction – is a matter of first impression for the Court, our cases correctly demonstrate the absence of any law that would prohibit the practice. In addition, we explained in our opening brief that Congress is aware that IDIQ contracts are being used for major construction projects, citing a recent House Report and a Senator's statement in the Congressional Record. Def. Br. 15. Tyler lambastes us for citing the

Senator's statement and accuses us of making a "hodgepodge of wild assertions," but Tyler does not address the House Report, a formal document created in the legislative process, which proves our point. Pl. Resp. 15-16.

Finally, Tyler dismisses the role of innovation in the procurement process. Pl. Resp. 2-4, 14-15. As we demonstrated in our opening brief, the Corps has made increasing use of IDIQ contracts for new construction projects during the past decade. Tyler argues in response that this procurement practice must be illegal because the Corps was not using it all along. Id. at 3. Lawful innovation is a virtue, not a smoking gun. See 48 C.F.R. § 1.102-4(e); see also Nuclear Energy Inst., Inc. v. EPA, 373 F.3d 1251, 1296 (D.C. Cir. 2004) ("[W]e expect that any agency may well change its past practices with advances in knowledge in its given field or as its relevant experience and expertise expands."). To address a recurring need for new barracks with standardized designs, and given the military's evolving requirements for the number of barracks, the Corps selected the IDIQ contracting method. See 48 C.F.R. § 16.504(b). Tyler cites no authority for its argument that an IDIQ contract cannot be used to satisfy new requirements under these circumstances. See Pl. Resp. 25. Accordingly, the Corps did not deviate from existing law by using an IDIQ contract for the Solicitation.[2]

II. TYLER'S INTERPRETATION OF "BUNDLING" IS WITHOUT MERIT

In our opening brief, we established that the bundling and consolidation provisions, which pertain to procurements of existing requirements, do not apply to procurements of new building construction, which is a new requirement. Tyler criticizes our interpretation of these provisions as "unreasonably narrow" because "all contracts for future goods and services are,

---

[2] In its response, Tyler repeats arguments from its opening brief about two documents in the administrative record. Pl. Resp. 12-15. At most, these documents have marginal significance to the legal issues before the Court. We addressed these documents in our opening brief. Def. Br. 13-15. No further argument is necessary.

ultimately, for 'new' ones." Pl. Resp. 25 (emphasis in original). This is merely a straw man argument. Future goods and services may be "new" in a sense, but that does not mean the Government's requirement for the goods and services is "new." For example, contracts for construction-related services, such as maintenance and repair at a given facility, are classic examples of existing requirements. Just because the Government may require maintenance and repair services at Fort Benning in 2009 does not make it a new requirement if the Government required the same work at Fort Benning in 2008. Some construction requirements, however, such as the new building construction at issue in this case, are, as the name suggests, "new."

The bundling and consolidation statutes expressly apply to only requirements that were "previously provided" under "separate smaller contracts," 10 U.S.C. § 2382(b), 15 U.S.C. § 644(e), not, as Tyler suggests, to requirements that "are similar to those previously performed." Pl. Resp. 27. As discussed in our opening brief, Tyler's interpretation of the bundling and consolidation provisions is contrary, most importantly, to the plain language of the statute, but also to SBA regulations and pending legislation as well.

Tyler points to various provisions in the Small Business Act and related regulations that require agencies to coordinate with the SBA before they "package or consolidate discrete construction projects." Pl. Resp. 17-19, 27-28 (citing 15 U.S.C. § 644(a); 13 C.F.R. § 125.2(b)(3)(ii); 48 C.F.R. § 19.202-1(e)). These provisions bolster our interpretation of the bundling and consolidation provisions, which do not include such language and do not apply to new building construction. See Steen v. United States, 468 F.3d 1357, 1361 (Fed. Cir. 2007) (citing, among other cases, Russello v. United States, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the

disparate inclusion or exclusion."). In any event, the Corps coordinated with the SBA.[3] AR 15, p. 302 (DD Form 2579, Small Business Coordination Record); AR 146, p. 11 (same).

Finally, Tyler argues that SBA regulations, which interpret the "previously performed" concept, are wrong and should be ignored. Pl. Resp. 25-27. The SBA regulations, however, are instructive and are consistent with the plain language of the statute. Tyler, nevertheless, contends that the Corps is exploiting a "loophole" in the bundling statute and, rather than wait for Congress to change the law, the Court should interpret the existing law based upon policy judgments of the current House Small Business Committee. Pl. Resp. 28-31. The Court's task, however, is to interpret existing law, not the law as it may exist if H.R. 1873 were to become law in the future. See Plaut v. Spendthrift Farm, 514 U.S. 211, 227 (1995) ("each court, at every level, must 'decide according to existing laws.'") (quoting United States v. Schooner Peggy, 5 U.S. 103, 109 (1801)); Hanover Bank v. Comm'r, 369 U.S. 672, 682 (1962) (although the argument "that the statute has created a tax loophole of major dimension that should be closed … might have been persuasive in securing enactment of the amendments to the statute made subsequent to the time the transactions involved here took place …, it may not, of course, have any impact upon our interpretation of the statute under review.")

---

[3] On page 26 of our opening brief, we stated: "The Small Business Administration reviewed and approved the Solicitation based upon the Corps' market research and the Acquisition Plan. AR 15, p. 302." We regret using the word "Solicitation" and should have said "proposed procurement." The SBA's representative, Paul Stone, reviewed and approved the Acquisition Strategy and the Acquisition Plan, which authorize the proposed procurement of barracks at issue in this case. See AR 149 (Mr. Stone's comments upon draft of Acquisition Plan); AR 203, p. 2 (Email from Mr. Stone to Mr. Tyler stating: "I was provided the opportunity to review and comment on the development of the acquisition strategy relating to the Corps' Centers of Standardization Program. After significant market research performed by the Corps, I did provide my concurrence on their proposed course of action."). Mr. Stone also twice reviewed descriptions of the proposed procurement of barracks using DD Form 2579. AR 15, p. 302; AR 146, p. 11. We understand, however, that Mr. Stone did not review the Solicitation prior to the time when the Corps issued it pursuant to the Acquisition Strategy and the Acquisition Plan.

Accordingly, the bundling and consolidation provisions do not apply in this case.

## III. TYLER HAS NO MEANINGFUL RESPONSE TO OUR SHOWING THAT THE CORPS HAS A RATIONAL BASIS FOR THIS PROCUREMENT

In our opening brief, we demonstrated that the administrative record evidences a rational basis for all pertinent aspects of this procurement, and we rebutted all of Tyler's arguments to the contrary. In response, Tyler summarizes and incorporates its prior arguments by reference. Pl. Resp. 31-35. No further discussion of these issues is required. We note, however, Tyler's incorrect assertion that "mis-statements of Plaintiff's arguments are peppered throughout Defendant's brief." Id. at 32. We have fairly discussed and rebutted each of Tyler's arguments.

Tyler, nevertheless, argues that the Corps violated the general policies that are embodied in the Small Business Act. Pl. Resp. 19-24. As discussed in our opening brief, however, the administrative record shows that the Corps devoted extensive consideration to small business issues and complied with Federal small business policies. Def. Br. 23-28.

Tyler complains further that the Corps has favored small businesses owned by members of disadvantaged groups, over the "silent majority" of general small businesses such as Tyler. Pl. Resp. 19-24. This is a complaint that should be directed to Congress, which passed the Competitiveness Demonstration Program to favor these disadvantaged groups. Def. Br. 28-29; see also, generally, 151 Cong. Rec. H4727, H4773-75 (Stmts. of Rep. Velazquez and Rep. Davis) (June 20, 2005) (debating the merits of terminating the Competitiveness Demonstration Program, with contrasting arguments that the program injures small businesses generally, and it does not injure small businesses owned by disadvantaged groups).

Finally, Tyler asserts that the Solicitation "places the contract unreservedly and undeniably beyond the reach of any possible small business concern," and denies them "their ability to compete," because in the first proposal phase, the Corps selected five firms, which do

not qualify as small businesses. Pl. Resp. 21-22 (emphasis in original). Tyler's assertion is false and assumes its own conclusion. Just because a small business was not chosen does not mean that small businesses were denied the opportunity to compete. Indeed, Tyler's assertion that no small business submitted a proposal in response to the Solicitation is unsupported and false. **[CONFIDENTIAL MATERIAL REDACTED]** Cf. AR 23, p. 16 (describing MILCON requirements to be addressed by MATOC for barracks located primarily at Fort Benning and by another MATOC for barracks located primarily at Fort Jackson). In other words, Tyler "doth protest too much." Cf. WILLIAM SHAKESPEARE, HAMLET act 3, sc. ii, ln. 242.

CONCLUSION

For the foregoing reasons, and for the reasons set forth in our opening brief, we respectfully request that the Court grant the United States judgment upon the administrative record, deny plaintiff's cross-motion for judgment on the administrative record, and deny plaintiff's requests for permanent injunctive relief and declaratory relief.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

s/Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, DC 20530
Tel: (202) 353-9303

Attorneys for Defendant

OF COUNSEL:

Thomas J. Warren, CPT, JA
Office of the Chief Counsel
United States Army Corps of Engineers
441 G. St. N.W.
Washington, DC 20314

Charles L. Webster III
Engineer Trial Attorney
United States Army Corps of Engineers
Fort Worth District
819 Taylor Street
Fort Worth, Texas 76102

June 2, 2008

CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2008, a copy of foregoing "DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD (REDACTED)" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Douglas G. Edelschick