IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| TYLER CONSTRUCTION CO., | ) | |
| | ) | No. 08-94C |
| Plaintiff, | ) | (Judge Wiese) |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

REGINALD T. BLADES, JR.
Assistant Director

DOUGLAS G. EDELSCHICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, DC 20530
Tel: (202) 353-9303

Attorneys for Defendant

OF COUNSEL:

Thomas J. Warren, CPT, JA
Office of the Chief Counsel
United States Army Corps of Engineers
441 G. St. N.W.
Washington, DC 20314

Charles L. Webster III
Engineer Trial Attorney
United States Army Corps of Engineers
Fort Worth District
819 Taylor Street
Fort Worth, Texas 76102

July 7, 2008

Defendant, the United States, respectfully submits this supplemental brief, pursuant to the Court's instructions at oral argument, to summarize the operative provisions of the Solicitation that are pertinent to Tyler's protest.[1] AR 1 (original solicitation); AR 5-13 (Amendments 1-9).

The Solicitation requests proposals for an IDIQ contract with MATOC features. AR 1, p. 87 (Solicitation, providing for IDIQ); AR 10, p. 2 (Amend. 6, changing contract from SATOC to MATOC); see also Dkt. No. 20, Def. Mot. to Correct, Ex. B (Amend. 10); April 24, 2008 Order (deeming plaintiff's SATOC arguments moot). The contract has one base year and two option years. [2] AR 13, p. 3 (Amend. 9, reducing option years from 3 to 2). The total capacity for all work pursuant to the contract is $301 million. AR 10, p. 2 (Amend. 6).

The Solicitation requests proposals for the construction of barracks. AR 10, pp. 15-17 (Amend. 6). These barracks will be located at various Army installations in the Southeastern United States. Id. The typical cost of each barracks project is $31.25 million, and, with a total contract capacity of $301 million, the Solicitation contemplates that there will be approximately nine barracks. AR 10, pp. 2-3 (Amend. 6). In fact, the administrative record identifies a total of nine barracks, seven in Georgia and two in Kentucky. AR 23, p. 16.

The barracks comprise only one component of the AIT, BT, and WIT facilities that are described in the Solicitation. AR 10, pp. 15-17 (Amend. 6). AIT, BT, and WIT facilities consist of multiple types of buildings, including barracks, dining facilities, and battalion headquarters ("HQs"). Id. The dining facilities and battalion HQs are being procured separately pursuant to other solicitations. Id. WIT facilities also include administrative buildings and Soldier Family

---

[1] Defined terms in our motion for judgment upon the administrative record, Dkt. No. 22 (filed April 25, 2008), have the same meaning in this supplemental brief.

[2] We regret that our opening brief did not cite the provisions in: (a) Amendment 9 that changed the number of option years from three to two, and reduced the minimum task order amount from $15 million to $14 million; and (b) Amendment 6 that changed the small business subcontracting goal from 51.2 percent to 70 percent. This supplemental brief cites the operative provisions.

Assistance Centers ("SFACs"), id., which are being procured separately pursuant to solicitation number W9126G-08-R-0162, "HubZone Multiple Award Task Order Contract MATOC) for Administrative Facilities in the Southeast Region (AL, FL, GA, KY, MS, NC, SC, TN)."

Finally, the barracks include some incidental structures. AR 10, pp. 15-17 (Amend. 6). The barracks at AIT and BT facilities include outdoor areas (jogging track and parking lots), and the barracks at BT facilities include lawn equipment storage buildings (sheds). Id. These structures are likely to cost less than $100,000 and are incidental to the main barracks building. See id. Aside from these incidental structures, the Solicitation seeks to procure barracks only.

The Corps will award firm fixed price IDIQ contracts to firms whose proposals represent the overall best value, considering technical design quality, performance capability, and cost. AR 13, pp. 3, 26. In addition: "All offerors (both large and small businesses) will be evaluated on the level of small business commitment they demonstrate for the proposed acquisition, and their prior level of commitment to utilizing small businesses in performance of prior contracts." AR 1, p. 69; accord AR 13, pp. 39-40 (Amend. 9). The Corps has established "reasonable and achievable" subcontracting goals for the utilization of small businesses, including a goal that 70 percent of subcontracted work should be performed by small business. AR 10, p. 20 (Amend. 6).

The Corps is evaluating proposals in a two phase process. AR 13, p. 3 (Amend. 9). In phase one, the Corps evaluated the capability of interested firms to execute a design build construction IDIQ contract, and the Corps selected five firms to compete in phase two. Id. In phase two, these five firms may submit detailed price proposals and other data. Id. Firms may associate together as teams or joint ventures when submitting proposals. AR 13, p. 7.

The Solicitation provides that prospective offerors must demonstrate "their capability to successfully execute design-build or construction task orders under the contract resulting from

this contract." AR 1, p. 24. Accordingly, the Corps will evaluate prospective offerors based upon their experience with "similar" construction projects. AR 6, p. 14 (Amend. 2, § 5.1.1.1). "Projects will be considered similar to this procurement if they are similar in complexity, in type, scope, or magnitude." Id. "Projects do not have to include all of the criteria; however, projects that meet all of the criteria may be more highly rated." Id. One of the criteria is experience with new construction of apartment complexes, college dorms, or equivalent buildings. AR 6, p. 14 (§ 5.1.1.1.1). Another criterion is experience with projects having a size of 73,000 to 329,000 square feet, which is the typical size range for the barracks. AR 10, p. 3 (Amend. 6, § 5.1.1.1.2). A third criterion is experience with projects having a construction value of at least $31.25 million, which is the typical cost of one barracks. Id. (§ 5.1.1.1.3). The $31.25 million figure corresponds to the average cost of nine barracks, plus approximately 10 percent to account for cost variances. AR 23, p. 16. In addition, potential offerors must post a bid bond of $3 million. AR 1, p. 92 (§ 52-228-1(c)). There is nothing in the Solicitation that prevented Tyler from submitting a proposal and competing for a contract award.

The Corps intends to award two or more contracts pursuant to the Solicitation. Dkt. No. 20, Ex. B (Amend. 10); see also AR 10, p. 2 (Amend. 6, changing the contract from a SATOC to a MATOC). In other words, it is likely that two or three contractors will perform the work that is required to construct nine barracks facilities, with each contractor performing three or more barracks projects and with the resulting economies of scale.

The Corps will order barracks pursuant to the Solicitation by issuing task orders in a competitive evaluation process. AR 1, pp. 104-05 (§ 1.23(c)); AR 10, pp. 2, 40 (Amend. 6). The Corps anticipates issuing task orders on a single project basis (one task order for each barracks project) to promote price competition, but the Corps has reserved the right to order multiple

projects using a single task order, subject to the Order Limitations clause. AR 1, pp. 87-88 (§ 52.216-22(c)). The Order Limitations clause provides that the contractor is required to honor any task order with a minimum of $14 million, with a maximum of $47.5 million for any single item, and with a maximum of $95 million for any combination of items. AR 13, p. 47 (Amend. 9). These terms notify potential offerors of the range of possible task orders for barracks.

The figures in the Order Limitations clause correspond to the minimum estimated cost for a single barracks project ($16 million), the maximum estimated cost for a single barracks project ($43 million), and the maximum estimated cost of two barracks projects ($85 million), plus or minus approximately 10 percent to account for variances in project costs. AR 23, p. 16. If a contractor has the ability to construct two barracks projects at the same time, it ensures that contractors can move labor and resources, after the early phases of the first project, to the early phases of a second project or even a third project ("continuous build"), without having to wait for completion of the later phases of the first project, saving both time and money.

The total capacity for all task orders is $301 million, AR 10, p. 2 (Amend. 6); however, contractors only are required to bond "on a task order basis" for 100 percent of the individual task order price. AR 1, p. 103. A contractor is not required to furnish performance and payment bonds until the time when "the task order is issued." Id. Thus, bonding capacity is not a criterion for receiving a contract award at the proposal stage, but it is a practical constraint upon a contractor that seeks to compete for a given task order. Tyler alleges that it has $50 million in bonding capacity. Dkt. No. 17-2, Aff. Charles P. Tyler ¶ 5 (filed March 25, 2008). At least in theory, therefore, Tyler could have sufficient bonding capacity to compete for task orders and barracks projects. A firm such as Tyler, however, with relatively limited bonding capacity, is

less likely to be competitive in the task order competition process, and is less likely to help the Corps achieve economies of scale and continuous build, which are critical to mission success.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in our opening and reply briefs, we respectfully request that the Court grant the United States judgment upon the administrative record, deny plaintiff's cross-motion for judgment on the administrative record, and deny plaintiff's requests for permanent injunctive relief and declaratory relief.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

s/Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, DC 20530
Tel: (202) 353-9303

Attorneys for Defendant

OF COUNSEL:

Thomas J. Warren, CPT, JA
Office of the Chief Counsel
United States Army Corps of Engineers
441 G. St. N.W.
Washington, DC 20314

Charles L. Webster III
Engineer Trial Attorney
United States Army Corps of Engineers
Fort Worth District
819 Taylor Street
Fort Worth, Texas 76102

July 7, 2008

CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2008, a copy of foregoing "DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Douglas G. Edelschick