IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| TYLER CONSTRUCTION CO., | ) | |
| | ) | No. 08-94C |
| Plaintiff, | ) | (Judge Wiese) |
| | ) | |
| v. | ) | **CONFIDENTIAL MATERIAL** |
| | ) | **REDACTED** |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

# DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND SUPPLEMENTAL BRIEF (REDACTED)


GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

REGINALD T. BLADES, JR.
Assistant Director

DOUGLAS G. EDELSCHICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, DC 20530
Tel: (202) 353-9303

Attorneys for Defendant

OF COUNSEL:

Thomas J. Warren, CPT, JA
Office of the Chief Counsel
United States Army Corps of Engineers
441 G. St. N.W.
Washington, DC 20314

Charles L. Webster III
Engineer Trial Attorney
United States Army Corps of Engineers
Fort Worth District
819 Taylor Street
Fort Worth, Texas 76102


July 30, 2008

Defendant, the United States, respectfully submits this brief in response to plaintiff's second supplemental brief and in further response to the Court's questions during the conference call held on July 28, 2008.[1] For the most part, Tyler argues in its second supplemental brief that the Corps violated the general policies and bundling provisions embodied in the Small Business Act. We have responded to these arguments in our opening brief and, rather than repeat our arguments, we incorporate them by reference. Def. Br. 15-18, 23-28, 29-34.

An agency always can be said to have worded a solicitation more clearly with the benefit of 20/20 hindsight. The question before the Court, however, is whether the Solicitation clearly violates the law. The content of solicitations for IDIQ contracts is governed by 10 U.S.C. § 2304a(b) and 48 C.F.R. § 16.504(a)(4).

Section 2304a(b) provides:

> Solicitation. The solicitation for a task or delivery order contract shall include the following:
>
> (1) The period of the contract, including the number of options to extend the contract and the period for which the contract may be extended under each option, if any.
>
> (2) The maximum quantity or dollar value of the services or property to be procured under the contract.
>
> (3) A statement of work, specifications, or other description that reasonably describes the general scope, nature, complexity, and purposes of the services or property to be procured under the contract.

10 U.S.C. § 2304a(b). The parties have addressed these provisions in prior briefs, with Tyler challenging only whether the Solicitation complies with subsections (2) and (3). Pl. Br. 27-34; Def. Br. 34-35. Tyler does not address these provisions further in its supplemental briefs. For the reasons already stated, the Solicitation complies with section 2304a(b).

[1] Defined terms in our motion for judgment upon the administrative record, Dkt. No. 22 (filed April 25, 2008), have the same meaning in this brief.

FAR Section 16.504(a)(4) provides:

> A solicitation and contract for an indefinite quantity must --
>
> (i) Specify the period of the contract, including the number of options and the period for which the Government may extend the contract under each option;
>
> (ii) Specify the total minimum and maximum quantity of supplies or services the Government will acquire under the contract;
>
> (iii) Include a statement of work, specifications, or other description, that reasonably describes the general scope, nature, complexity, and purpose of the supplies or services the Government will acquire under the contract in a manner that will enable a prospective offeror to decide whether to submit an offer;
>
> (iv) State the procedures that the Government will use in issuing orders, including the ordering media, and, if multiple awards may be made, state the procedures and selection criteria that the Government will use to provide awardees a fair opportunity to be considered for each order (see 16.505(b)(1));
>
> (v) Include the name, address, telephone number, facsimile number, and e-mail address of the agency task and delivery order ombudsman (see 16.505(b)(5)) if multiple awards may be made;
>
> (vi) Include a description of the activities authorized to issue orders; and
>
> (vii) Include authorization for placing oral orders, if appropriate, provided that the Government has established procedures for obligating funds and that oral orders are confirmed in writing.

48 C.F.R. § 16.504(a)(4). Once again, the parties have addressed these provisions in prior briefs, with Tyler challenging only whether the Solicitation complies with subsections (ii) and (iii). Pl. Br. 27-34; Def. Mot. 34-35. Tyler does not address these provisions further in its supplemental briefs. For the reasons already stated, the Solicitation complies with FAR section 16.504(a)(4).

Tyler, nevertheless, complains in its second supplemental brief that the Government has a "secret" estimate for each of the barracks projects. Pl. 2d Suppl. Br. 3, 4. It is not in the best interest of the Government, however, to publicly disclose confidential estimates, and the law

expressly prohibits the Corps from doing so. 48 C.F.R. § 36.204 ("In no event shall the statement of magnitude disclose the government estimate."). The Government is permitted by law, however, to disclose the range of task order projects. 48 C.F.R. § 16.504(a)(3) ("The contract may also specify maximum or minimum quantities that the Government may order under each task or delivery order and the maximum that it may order during a specific period of time.") (emphasis supplied). The Solicitation accurately reflects that the range for any single project is $14 million to $47.5 million. Compare AR 13, p. 47 (Amend. 9) (Order limitation clause with range for any single project of $14 million to $47.5 million), with AR 23, p. 16 (Government's project estimates range from $16 million to $43 million).

Tyler complains also that the description of the magnitude of the seed project in the Solicitation is a misleading "exaggerat[ion]," such as to discourage small business participation and "effectively creat[e] a set-aside for large business concerns." Pl. 2d Suppl. Br. 2. This argument fares no better. The Solicitation provides that the seed project has "an estimated contract magnitude" that is "between $25,000,000 and $100,000,000." AR 13, p.3. Although the administrative record shows that the Government has developed a confidential estimate (**[CONFIDENTIAL MATERIAL REDACTED]**) for the cost of the seed project, AR 23, p. 16, the estimated range of $25 million to $100 million is required by law. FAR section 36.204 provides:

> In no event shall the statement of magnitude disclose the Government's estimate. Therefore, the estimated price should be described in terms of one of the following price ranges:
>
> (a) Less than $25,000.
>
> (b) Between $25,000 and $100,000.
>
> (c) Between $100,000 and $250,000.
>
> (d) Between $250,000 and $500,000.

(e) Between $500,000 and $1,000,000.

(f) Between $1,000,000 and $5,000,000.

(g) Between $5,000,000 and $10,000,000.

(h) More than $10,000,000.

48 C.R.R. § 36.204. There are "additional price ranges" for large defense procurements:

(i) Between $10,000,000 and $25,000,000;

(ii) <u>Between $25,000,000 and $100,000,000</u>;

(iii) Between $100,000,000 and $250,000,000;

(iv) Between $250,000,000 and $500,000,000; and

(v) Over $500,000,000.

48 C.F.R. § 236.204 (emphasis supplied). The Solicitation described the estimated magnitude of the seed project in terms of the range that is required by law. Any reasonable offeror reviewing the "estimated contract magnitude" of $25 million to $100 million in the Solicitation, AR 13, p.3, would develop its own estimate of the cost based upon the scope of work, for the purpose of submitting a competitive phase 2 proposal, rather than merely assume that the project would cost $100,000,000, as Tyler incorrectly suggests.

The Court inquired also as to whether the Corps has narrowed the scope of work during the course of this litigation. It has not. For example, the original synopsis that accompanied the Solicitation summarized the scope of work as: "Advanced Individual Training (AIT), Basic Training (BT) and Warrior in Transition Barracks (WIT), or similar facilities." AR 4, p.11. As part of Amendment 9 to the Solicitation, the Corps revised the synopsis to "delete the words – or other similar facilities" – in an effort to clarify that only barracks are to be constructed at the AIT, BT, and WIT facilities. AR 4, p.7. In fact, documentation in the administrative record, which predates the filing of this lawsuit, confirms that the Corps intends to procure only barracks

pursuant to the Solicitation. AR 23, p. 16. Moreover, all nine barracks that are contemplated by the Corps at the present time fall within the geographic region specified in the Solicitation.

Even if the Court were to find that the Solicitation is not a model of clarity in some respect, it does not mean that Tyler is entitled to relief. Tyler "must show a clear and prejudicial violation of applicable statutes or regulations.'" Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (citation omitted). As Tyler's counsel conceded at oral argument, "Tyler could have submitted a proposal in phase 1," and Tyler was not "precluded from doing so." June 25, 2008 Tr. 102:4-6. The alleged errors did not preclude Tyler from submitting a proposal, and yet, Tyler decided not to submit one anyway. A potential offeror has no chance of receiving an award if it never submits a proposal. Tyler, therefore, cannot establish that there was "substantial chance it would have received the contract award absent the alleged error." Banknote, 365 F.3d at 1351. There is no clear and prejudicial error in this case.

Finally, this important procurement of housing for our Nation's soldiers has been on hold since January 2008. We respectfully request that the Court exercise its sound discretion and decline to issue extraordinary relief in the form of a permanent injunction that would enjoin and further delay the procurement. See, e.g., PGBA, LLC v. United States, 389 F.3d 1219, 1225-26 (Fed. Cir. 2004) (affirming decision by the Court of Federal Claims to withhold injunctive relief in a bid protest even though the plaintiff prevailed on the merits); Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States, 56 Fed. Cl. 502, 521-22 (2003) (granting defendant's motion for judgment because injunction, that could negatively impact the military's ability to construct facilities to house soldiers in wartime, was not in the public interest).

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in our previous briefs, we respectfully request that the Court grant the United States judgment upon the administrative record, deny plaintiff's cross-motion for judgment on the administrative record, and deny plaintiff's requests for permanent injunctive relief and declaratory relief.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

s/Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, DC 20530
Tel: (202) 353-9303

Attorneys for Defendant

OF COUNSEL:

Thomas J. Warren, CPT, JA
Office of the Chief Counsel
United States Army Corps of Engineers
441 G. St. N.W.
Washington, DC 20314

Charles L. Webster III
Engineer Trial Attorney
United States Army Corps of Engineers
Fort Worth District
819 Taylor Street
Fort Worth, Texas 76102

July 30, 2008

CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2008, a copy of foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND SUPPLEMENTAL BRIEF (REDACTED)" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Douglas G. Edelschick